UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA GILDERS,

    Plaintiff,

v.

THE SALVATION ARMY and THE
SALVATION ARMY SERVICES, INC.,

    Defendants.

Case No. 24-cv-
Hon.

_____/
ERIC STEMPIEN (P58703)
MALLORIE M. BLAYLOCK (P84331)
STEMPIEN LAW, PLLC
Attorneys for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
eric@stempien.com
mallorie@stempien.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, PAMELA GILDERS, by and through her attorneys, Stempien Law, PLLC, hereby complains against Defendants, THE SALVATION ARMY and THE SALVATION ARMY SERVICES, INC., jointly and severally, and in support thereof states:

1. Plaintiff PAMELA GILDERS ("Gilders" or "Plaintiff") is a resident of the Township of Commerce, County of Oakland, State of Michigan.

1

2. Defendants, THE SALVATION ARMY and THE SALVATION ARMY SERVICES, INC. (collectively "Salvation Army" or "Defendants") are for-profit corporations which conduct systematic and continuous business in the City of White Lake, County of Oakland, State of Michigan; their resident for service of process being: CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Suite 600, Lansing, MI 48911.

3. Jurisdiction is vested with this Court pursuant to 28 USC §1331, 42 USC §2000e, et. seq., and 28 USC §1367.

4. The events giving rise to this action occurred within the Eastern District of Michigan.

5. On or about August 17, 2023, Gilders filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about July 8, 2024, the EEOC issued a Dismissal and Notice of Rights letter to Gilders for her Charge of Discrimination.

## GENERAL ALLEGATIONS

7. In May 2022, Gilders began her employment with Salvation Army at the Salvation Army store #1028, located in White Lake Township, Michigan, as a Cashier.

8. Gilders was soon thereafter promoted to Assistant Manager and continued her employment with Defendants until she was demoted, transferred, and constructively discharged.

9. During her tenure as Defendants' employee, Gilders was subjected to harassment, assault, and retaliation based on her sex.

10. Throughout Gilders' employment with Salvation Army, she was subjected to pervasive sexual harassment and assault by Defendants' Dock Supervisor, Lawrence "Larry" Stroh (hereinafter "Stroh").

11. Throughout Gilders' employment with Salvation Army, Stroh made lewd sexual comments to Gilders.

12. Between May 2022 and August 2022, while Gilders was a Cashier, Stroh repeatedly stated sexual innuendos to Gilders.

13. During Gilders' tenure as Assistant Manager, beginning in or about August 2022, Stroh told Gilders that she is 'on top of him' and he is 'underneath her,' as a way to use the employee hierarchy to insinuate sex positions.

14. In or about August 2022, while Gilders and Stroh were working on the dock, accepting donations to the Salvation Army, while Gilders was carrying a heavy box with both of her arms, Stroh approached Gilders acting as if he was going to take the box from her, but instead of assisting his co-worker, Stroh

grabbed Gilders' breast while she was carrying the box and unable to defend herself.

15. Gilders reported the August 2022 sexual assault on the dock to Defendants' Store Manager, Miranda, ("Store Manager Miranda") who replied to Gilders by stating that they 'cannot afford to lose Larry.'

16. Thereafter, Store Manager Miranda refused to stay with Gilders through the store's closing procedure, in order to properly train Gilders in the closing procedure process, despite Gilders only having been recently promoted to Assistant Manager and in need of necessary training.

17. Within or about a week of Gilders' August 2022 reporting to Store Manager Miranda, Store Manager Miranda disciplined Gilders with a write up and informed Gilders that she was being demoted because she was not learning the closing procedure fast enough, despite Gilders being refused necessary training.

18. Store Manager Miranda told Gilders that, if she refused to sign the disciplinary action, she would not have any other opportunity to be an assistant manager again. However, Assistant Manager, Gwen Decker, told Gilders that that is not true.

19. Defendant did not take any corrective action against Stroh and the harassment and assault continued.

20. In or about September 2022, Stroh sexual assaulted Gilders by putting his hands between Gilders' legs and grabbing Gilders' crotch again, while Gilders was working on the docks and carrying a large box, unable to defend herself.

21. Throughout Gilders' employment, Stroh would hover over Gilders; despite her repeated requests that he give her space.

22. Upon information and belief, other Salvation Army employees, including but not limited to Gary and Dominick, reported Stroh to Defendants and submitted complaints concerning Stroh's treatment of Gilders.

23. Upon information and belief, other Salvation Army employees reported to Defendants that Stroh spoke about Gilders all the time, all day long; but they did not immediately inform Gilders of Stroh's statements concerning Gilders because it was too gruesome.

24. Upon information and belief, Stroh threatened other male employees who liked, i.e. had a good working relationship, with Gilders.

25. Stroh, on multiple occasions, attempted to contact Gilders through social media during his employment with Defendants.

26. On or about October 20, 2022, Gilders called Defendants' District Manager, Andrew ("District Manager Andrew") and reported Stroh's sexual harassment and assault; reported that she was baselessly written up and disciplined after reporting sexual harassment and assault to Store Manager Miranda; and that

two other employees submitted complaints concerning Stroh's treatment of Gilders.

27. On or about October 26, 2022, Gilders submitted a written sexual harassment complaint to District Manager Andrew, in which she reported that she has been repeatedly subject to Stroh's offensive comments and behaviors; that Stroh inappropriately touched Gilders' body on two occasions; that she reported the August 2022 incident to Store Manager Miranda; that Store Manager Miranda refused to take any corrective action against Stroh; that Stroh constantly barrages Gilders with insulting comments and double entendres; that she had no choice but to file this complaint with District Manager Andrew; and that she is aware of Stroh's disgusting remarks about her body, as well as threats Stroh made to co-workers.

28. Thereafter, Gilders was hailed in for a meeting with District Manager Andrew and Store Manager Miranda to discuss her reporting.

29. Thereafter, Stroh was eventually, finally, suspended.

30. In or about December 2022, Defendants terminated Stroh's employment.

31. Upon Stroh's termination, a new Manager, Diane Butler ("Manager Butler") was assigned to store #1028.

32. Manager Butler immediately began harassing Gilders for 'getting Stroh fired.'

6

33. Manager Butler indicated to Gilders that she [Manager Butler] had worked with Stroh previously and made him watch Defendants' training video on sexual harassment many times; which reveals that Defendants had knowledge and/or reason to know of a habit and history of sexual assault and/or harassment prior to Stroh's first sexual assault on Gilders.

34. Manager Butler forced Gilders to work on Sundays, when Salvation Army employees are generally not to work.

35. Manager Butler required Gilders to complete an unreasonable amount of work before the end-of-day on Sunday, and proceeded to yell at Gilders for 'taking so long' to complete the work.

36. Between late-2022 and July 2023, Manager Butler issued several write ups and disciplined Gilders for reasons that were not grounded in fact, including but not limited to, closing late and not cleaning a back room.

37. In 2023, Gilders was transferred to Defendants' Highland, Michigan location where she was made to close the store almost every single night and work every weekend despite the fact that she was supposed to have, and should have had, every other weekend off of work.

38. Gilders was written up and disciplined for taking work off for illness, whenever she took work off for illness.

39. Store Manager Miranda told Gilders when Gilders' employment first began that Defendants 'harass the person until they leave.'

40. On or about July 23, 2023, Gilders was constructively discharged, pushed out, and had no choice but to involuntarily resign as a result of the harassment and retaliation in response to her reporting of sexual harassment and assault.

41. Gilders would not have been subjected to the sexual conduct or communication but for the fact of her sex.

42. Gilders did not solicit or entice the sexual conduct or communication.

43. The employment disciplinary actions taken against Gilders prior to her discharge were all because of her reporting and opposing sexual harassment.

44. Salvation Army's continued discipline of Gilders was pretext for pushing out Gilders from her employment because she reported and opposed violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

## COUNT I – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT SEXUAL HARASSMENT

45. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

46. At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of 42 USC § 2000e et. seq.

47. Plaintiff was sexually harassed by Defendants' agents/employee throughout the course of her employment, including but not limited to unwelcome comments and conduct of an offensive and sexual nature directed at Plaintiff and the creation of a hostile work environment, as fully articulated herein above.

48. Plaintiff complained about the harassment and the events described above to Defendants.

49. The sexual harassment was severe and pervasive.

50. Defendants did not promptly remedy ongoing sexual harassment when Plaintiff complained.

51. Defendants permitted the sexual harassment to continue.

52. The conduct of Defendants' agent/employee in sexually harassing Plaintiff constitutes sexual harassment and discrimination in violation of 42 USC § 2000e et. seq.

53. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## COUNT II – VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT RETALIATION

54. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

55. Plaintiff engaged in protected activity when she complained to Defendants about the sexual harassment by Defendants' agent/employee, as fully described above.

56. Plaintiff's protected activity was known to Defendants.

57. Defendants failed and refused to take any action regarding the sexual harassment and assault of Plaintiff.

58. Plaintiff suffered adverse employment actions, including but not limited to reprimand and discharge.

59. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

60. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## COUNT III – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT
## SEXUAL HARASSMENT

61. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

62. At all material times, Plaintiff was an employee, and Defendants were her employers, covered by and within the meaning of the ELCRA, MCL 37.2101 et seq.

63. Plaintiff was sexually harassed by Defendants' agent/employee throughout the course of her employment as fully explained herein, constituting disparate treatment of, and impact on, Plaintiff.

64. The sexual harassment was severe and pervasive.

65. Plaintiff complained about harassment and the events described herein to Defendants.

66. Defendants did not promptly remedy the ongoing sexual harassment when Plaintiff complained.

67. Defendants permitted the sexual harassment to continue.

68. The conduct of Defendants' agent/employee in sexual harassing Plaintiff constitutes sexual harassment and sex discrimination in violation of the ELCRA.

69. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

### COUNT IV – VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT RETALIATION

70. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein and further states that:

71. Plaintiff engaged in protected activity when she complained to Defendants about the repeated sexual harassment by Defendants' agent/employee, as fully described above.

72. Plaintiff's protected activity was known to Defendants.

73. Defendants failed and refused to take any action regarding the harassment of Plaintiff.

74. Plaintiff suffered adverse employment actions, including but not limited to reprimand and discharge.

75. There is a causal connection between the protected activity and the adverse employment actions taken against Plaintiff.

76. As a result of the foregoing, Plaintiff has suffered damages, including but not limited to lost past and future wages, lost past and future employment benefits, loss of earning capacity, severe emotional distress, costs and attorneys fees.

## COUNT V – SEXUAL HARASSMENT (QUID PRO QUO HARASSMENT)

77. Plaintiff hereby incorporates by reference and realleges all previous paragraphs of this Complaint as if fully set forth herein and further states that:

78. Plaintiff belongs to a protected group.

79. Plaintiff was subjected to communication and conduct on the basis of sex.

80. Plaintiff was subjected to unwelcome sexual conduction and communication.

81. Submission to, or rejection of, Stroh's sexual statements, advances, touching, conduct, and communications were factors in decisions relating to Plaintiff's job benefits, including but not limited to Plaintiff's employment position as an assistant manager.

82. Plaintiff was subjected to unwelcome sexual harassment in the form of sexual advances.

83. Plaintiff's submission to the unwelcome advances was an express or implied condition for holding and/or keeping her position as an assistant manager.

84. Plaintiff's refusal to submit to Stroh's sexual harassment resulted in a tangible job detriment.

85. Plaintiff's reporting of Stroh's sexual harassment and assault resulted in a tangible job detriment.

86. Defendants were in a position to offer tangible job benefits in exchange for Plaintiff submitting to, and/or not objecting to or reporting, Stroh's sexual

13

advances or, alternatively, to threaten tangible harm for a failure to submit to the prohibited conduct or communications and/or for reporting said conduct.

87. Stroh's sexual statements, advances, touching, conduct, and communications were made in his capacity as an agent of Salvation Army.

88. These circumstances, as fully explained herein, constitute quid pro quo sexual harassment.

89. Defendants are strictly liable for the conduct of their supervisory employees, including Stroh.

90. Defendants are strictly liable for the quid pro quo harassment of Plaintiff.

91. As a proximate result of the quid pro quo harassment, Plaintiff suffered economic and non-economic damages; has suffered and may continue to suffer mental and emotional distress; and has suffered and may continue to suffer educational and career harm.

92. As a proximate result of the quid pro quo harassment, Plaintiff suffered injury and damage, past, present, and future, including the following:

   a. pain, suffering, and emotional distress;

   b. humiliation, mortification, and embarrassment;

   c. medical expense;

   d. actual wage loss and lost earning capacity;

   e. loss of academic school credits; and

f. other injuries and damages and consequences that are found to be related to the assault and battery that develop or manifest themselves during the course of discovery and trial.

WHEREFORE, Plaintiff, PAMELA GILDERS, prays that this Honorable Court enter a judgment in her favor against Defendants, THE SALVATION ARMY and THE SALVATION ARMY SERVICES, INC., in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## JURY DEMAND

Plaintiff PAMELA GILDERS hereby demands a trial by jury of the within cause.

Respectfully submitted,

STEMPIEN LAW, PLLC

*/s/ Mallorie M. Blaylock*
Mallorie M. Blaylock (P84331)
Attorney for Plaintiff
38701 Seven Mile Rd., Suite 445
Livonia, MI 48152
P/F: 734-744-7002
mallorie@stempien.com

Dated: September 16, 2024